CURTIS (BROWN v.). See Case No. 2,000.

---

## Case No. 3,500.
### CURTIS v. BUTLER COUNTY.

[6 Pittsb. Leg. J. 443; 1 Pittsb. Rep. 516.]

Circuit Court, D. Pennsylvania. May Term, 1859.

ACTION ON COUNTY RAILWAY AID BONDS — BURDEN OF PROOF — RECITALS — BONA FIDE PURCHASERS.

[1. When negotiable county railway aid bonds and coupons sued on are proved to have been fraudulently issued, the plaintiff is then bound to show that he is a bona fide holder for a valuable consideration of some amount.]

[2. Purchasers of negotiable county railway aid bonds, which recite the act under which they were issued, are presumed to have notice of a provision therein forbidding the obligee to put them in circulation for less than their par value, and are therefore bound to inquire whether this provision was violated.]

[3. But, if such bonds were first put out by the obligee at their par value, the fact that they were again received by such obligee at less than par will not affect the right of a subsequent bona fide purchaser to recover upon them.]

[4. Where county railroad aid bonds are sold by the railroad company at less than par, in violation of the statute authorizing their issuance, which statute is recited in the bonds, a subsequent bona fide purchaser can recover from the county only the amount which the railroad company received for them.]

[This was an action by Jacob E. Curtis against the county of Butler upon certain bonds and coupons issued by the county to aid in building a railroad.]

The county of Butler, through its commissioners, pursuant to an act of the legislature, and on a recommendation of the grand jury of the county, subscribed $250,000 to the stock of the North Western Railroad Company, a concern of little or no value, paying for the stock in the county bonds. The action is brought to recover interest now due and unpaid upon forty-nine of these coupon bonds. Twenty-one of these interest coupons are for the sum of thirty dollars each, and twenty-eight are for the sum of fifteen dollars each. The defence set up was that the bonds were issued in violation of law, having been sold under par; that Butler county never received the benefit of a dollar from the railroad company; that in pursuance of the contract the company was bound to pay the interest upon the bonds issued by the county, until the road was finished; that the company, in the interim, was liable for the interest, and all must have known that the bonds could not legally have been sold below par. They would prove that the contractors had agreed to construct said railroad, and to take in payment the bonds issued to the company; that the estimates of the contractors were increased thirty-six per cent. over cash prices, realizing but sixty-four per cent. on the bonds. To all this it was objected by counsel for plaintiff that the bond of the county was a consummation of the contract with the company; that it did not appear upon the face of the bonds that they shall not be sold at less than par, and hence, holders have a right to take them as they appear; that the holder had nothing to do with any outside agreement between the company and the county, as to the payment of interest, and that, if the company failed to keep its contracts with the county, the county should look to the company for redress. These points were overruled by the court, and the fact of the liability of the company for interest until the road was finished was established by a written contract to that effect between the county and the company, notice of the existence of which contract had been given the plaintiff. The fact, also, of increasing the estimates, so as to cover the difference between the market price and the par of the bonds, was also proven. The defence contended that the commissioners had exceeded their authority, and their acts were therefore void. Also, that the bonds were not transferable, inasmuch as the law required that they should be made payable to the company, and not to "bearer." It mattered not that the word appeared on the face of the bond; if it was there in violation of the act, and of the conditions upon which the subscription was made, it could not make the bonds negotiable.

Hopewell Hepburn and Geo. Shiras, Jr., for plaintiff.

John Graham and John N. Purviance, for the defence.

GRIER, Circuit Justice (charging jury). Plaintiff claims as holder of 49 coupons for payment of interest on certain bonds issued by the county of Butler. No. 1 of these bonds has been given in evidence as a sample of the bonds. This is a species of bonds which has come into use of late years, where cities and other corporations issue bonds in form of the public securities issued by states. For convenience, and to give them greater value in the market, they have assumed the form of securities negotiable by delivery, that may pass from hand to hand like bank

notes; the coupons attached, constitute, by the contract of the obligor and custom of trade, the evidence to be in the hands of the bearer that he is holder of the bond and entitled to receive the instalment of interest. As their name imports, they are to be cut off from the bond, and the possession of them by the obligor is the evidence that the interest has been paid. Their negotiability by delivery arises from the contract of the bond, payable to the bearer, who, having severed the coupon from the bond, must have been in possession of the bond as bearer or holder. The value of the securities depends upon the peculiar faculty of negotiating or transferring them and their coupons, as the evidence of a right to receive the interest. Assuming that you believe the evidence that these bonds have been executed as they purport to be, and the several coupons in evidence were attached to the bonds to which they purport to belong,—that they were delivered to the railroad company in payment of a subscription to the stock of the company.

The first great question which has been raised by defendants is whether, under the evidence, not disputed, as to the action of the grand jury and the railroad company, the commissioners, or any two of them, had authority to issue these bonds binding the people of Butler county to pay the money according to the covenants therein contained.

This case differs in many respects from the case of McCoy v. Washington Co. [Case No. 8,731], decided in this court at last term.

1. There the question as to making subscription and issuing bonds was submitted to a vote of the people who were to be taxed to pay them.

2. The commissioners of the county were authorized, in direct terms, to borrow money, and to execute bonds with interest payable semi-annually, and transferrable in any manner they chose to direct, and to make provisions for the payment of principal and interest, and the railroad company was authorized to guarantee the payment of both principal and interest.

Now, it may be admitted (since the decision of your own supreme court) that the legislature may, without any such submission to the vote of the people, or even to the discretion of a grand jury, authorize the commissioners of a county to issue bonds binding the people and property of a county to pay money raised to buy stock, and become partners in a railroad corporation. Such an unusual and extraordinary power to mortgage the property of others without their individual consent should be most clearly and distinctly set forth in the statute which is supposed to authorize it. It ought not to be left to inference from vague and dubious phraseology. If it were a city corporation, having a legislature of its own, (a sort of imperium in imperio—or state within a state,) a general power to borrow money for certain purposes might be sufficient, leaving it to their own legislature, immediately representing the citizens, to devise the form of security to be given. But here we have not direct authority either to borrow money, to issue bonds of any sort, or to provide for the payment of principal or interest. It is true, such an authority might be guessed at or inferred as having been intended by the words "to make payment on such terms and in such a manner as may be agreed upon by said company and the proper county."

The grand jury are introduced only to fix the amount and approve the agreement to subscribe. It is true, the corporate powers of the county are by law exercised by the commissioners. Act 1844; Bugully, Dig. p. 172. But suppose there had been a direct power to the three commissioners of a county, to issue bonds, a question might arise, whether bonds signed by two would be binding. It is true, a majority of the commissioners may execute the ordinary duties of the corporation, but whether such an extraordinary and summary power to bind others would be so construed might admit of some doubt. It is true, the last proviso of this section, that some sort of bonds of the county are to be given in payment of subscription, assumes that fact, but it confers no direct authority on the commissioners to execute any sort of bonds. But assuming that the power is intended to be given to the railroad company, and the commissioners to devise any sort of bond show an agreement, that the county was to be bound to pay the interest on these bonds? Perhaps the giving by the one, and receiving by the other, may be considered the best evidence of this fact. If this act contained direct and express authority to issue bonds, I would say the commissioners might issue them in the best form to give them value in the money market, which is the form adopted.

Without saying that an authority to issue bonds may not be made out by inference or construction, I feel a doubt as to my right to do so, and as the case can be reviewed in the supreme court [24 How. (65 U. S.) 435], by a certificate of a division of opinion, my brother and myself have agreed to differ, and certify this case to the supreme court on this point, as upwards of $60,000 depend on the question. But the case may be given to the jury on the other points, so as to save another trial, by reserving the question as to the power of the commissioners and the validity of the bond. The jury will therefore consider the case as if the court had instructed them that the persons signing these bonds had full authority of law to sign and deliver them in the manner and form as has been done, and to find a verdict under the following instructions, and if, in accordance with said instruction, they find for the plaintiff, let them state the amount found subject to the opinion of the court on the point reserved.

The court instruct you that, assuming the commissioners to have authority to issue these bonds, and by the covenant bind the county, and did issue them therein, the plaintiff, if a bona fide holder thereof, may recover upon these coupons as declared upon.

2. They are made negotiable by the contract of the parties and the holders of the coupons, which, from usage and the agreement of the parties, are to be considered to have a prima facie right to demand the interest and recover in this suit, unless they have been fraudulently issued.

3. If proved to have been fraudulently issued, the plaintiff, under the notice in the case, would be bound to satisfy you that he is a bona fide holder for a valuable consideration of some amount. The holders of these bonds and coupons may be considered as having notice of all the provisos and conditions of the act of assembly recited in their bond, and are presumed to know that the obligees, the railroad companies, had no authority to put them in circulation, or sell them at less than their par value, and were therefore bound to inquire if such was the fact. If the bonds were first paid out for work done at par value, and thus put in circulation as a sort of currency, the fact that they were afterwards received or passed to the company at their market value, or for less then par value, will not affect this case. If you find that the bonds were not fraudulently issued, you need not inquire farther as to the consideration paid by the plaintiff. For, if paid out to the workmen on the road, as sworn to by Mr. Painter, it is immaterial to this case what the plaintiff paid for them, if anything. If you find the bonds were issued and paid in good faith, according to the conditions of the act, you will calculate the amount, with interest, and find a verdict for that sum, subject to the opinion of the court as to the validity of the bonds. If the jury should find that the bonds were originally sold for 64 per cent., plaintiff would have a right to recover that much at least.

The jury then retired, and in three hours after they came into court for instructions. They wished to know if they were correct in understanding the court to say that they could not find for the defendants unless they believed that the bonds had been obtained by fraud on the part of the plaintiff. Judge GRIER replied that he had so charged, and illustrated his meaning at considerable length. The jury retired again, and in a few minutes returned the following verdict: "The jury find for plaintiff six hundred and seventy-two dollars, subject to the opinion of the court as to the legal authority of the commissioners to bind the people of the county of Butler by the securities declared on. But, in case the court shall decide that the commissioners had not such an authority vested in them by law, then the court will enter a verdict for defendants." One of the jurors

stated to the court that he was unanimously instructed by his fellow jurors to say that, if they could have done so without conflicting with the charge of the court, there were many facts which would have induced them to find for the defendants. From the verdict, it will be seen that the plaintiff has only recovered in the amount of sixty-four per cent., being the price at which the bonds were sold. The amount claimed by plaintiff was $1,050.